AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

Michael Olaf Schuett

### CRIMINAL COMPLAINT

CASE NUMBER: 2:10- MJ - 1015 SPC

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  From in or about November of 2007, to the present, in Collier County, in the Middle District of Florida, defendant(s) did,

knowingly conduct, control, manage, supervise, direct and own an unlicensed money transmitting business

in violation of Title 18, United States Code, Section(s) 1960 and 2.  I further state that I am a(n) Special Agent with United States Secret Service, and that this Complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  □ Yes  ☑ No

Signature of Complainant
Nicholas J. Menster

Sworn to before me and subscribed in my presence,

Feb. 17, 2010

at    Fort Myers, Florida

United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

**Affidavit in Support of Application for**
**Criminal Complaint, Search Warrant, and Seizure Warrants**

I, Nicholas J. Menster, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the United States Secret Service, and have been so employed since January, 2009. I have a Bachelor of Science degree with a focus on Criminal Justice from the University of Toledo, Toledo, Ohio. I have received training at the Federal Law Enforcement Training Center and the United States Secret Service Rowley Training Center in the techniques and methodology of general law enforcement and white collar criminal investigations. I am currently assigned to the Southwest Florida Financial Crimes Strike Force (SWFFCSF), a strike force comprised of Secret Service agents as well as other federal state and local law enforcement officers. The mission of the SWFFCSF is to investigate financial crimes and crimes involving the Internet. I have participated in the execution of search warrants involving the search and seizure of computer equipment.

2. The information contained in this affidavit is based, in part, on my personal knowledge and observations during the course of this investigation, as well as information provided to me by cooperating sources and other law enforcement agents/officers; additionally, this affidavit is based upon my training and experience as well as that of other law enforcement agents/officers working with me in this investigation. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set

1

forth all of the information about which I, or collectively the other agents involved in this investigation, have knowledge.

3.  This affidavit is provided in support of an application for seizure warrants, an application for a search warrant for a residence located at 1378 Chesapeake Avenue, Naples, Florida 34102, and/or a criminal complaint charging Michael Olaf Schuett with violations of Title 18, United States Code, Section 1960.

### Background on Michael Olaf Schuett

4.  Michael Olaf Schuett is a twenty-nine year old white male who is  a German National, currently residing in Naples, Florida, at 1378 Chesapeake Avenue, Naples, Florida 34102.[1]  Schuett is presently in the United States on a B-2 visa, "non-immigrant visitor for pleasure," which expires on April 17, 2010.

5.  This investigation reveals that Schuett[2] appears to be operating an unlicensed money transmitting business through his various corporations for one or more internet gambling organizations, by receiving and disbursing gambling winnings to persons in the United States and Canada.  Such winnings are wire transferred from Europe to bank accounts Schuett controls in the Middle District of Florida.  Schuett has several hundred businesses all identified in Florida business entity records as operating at the subject premises to be searched,

---

[1] The address "1378 Chesapeake Avenue, Naples, FL 34102" appears on Schuett's Florida Identification card issued on October 27, 2009.

[2] A German passport issued on 17 August 2004 (renewed on 18 September 2008), refers to the subject of this investigation as Michael Olaf Schutt, the u with two dots over it.

1378 Chesapeake Ave. Naples, FL 34102.  Your affiant believes that based on the information contained herein, that probable cause exists to believe that Schuett is operating an unlicensed money transmitting business at the premises to be searched and that evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 1960 (unlicensed money transmitting business), inter alia, are located at the subject premises.  The premises to be searched, a residence located at 1378 Chesapeake Ave. Naples, FL 34102  is more particularly described in Attachment A.

6.  Of the hundreds of companies that he has created, Schuett is currently using nine to conduct activities which are prohibited by, inter alia, Title 18, United States Code, Section 1960; those companies are as follows: MI Global Inc., MCM Capital Management Inc., US AG 24 Inc.[1], South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc.  Among those companies, at least MCM Capital Management Corp., MI Global Inc. and South Naples Escrow Company are each registered with the State of Florida as operating at the subject premises.  Schuett is currently operating MCM Capital Management, Inc., MI Global, and US AG 24 Inc., all with bank accounts at Bank of America, and South Naples Escrow Company with a bank account at Ironstone Bank, Southwest Florida Payroll Co. with a bank account at SunTrust Bank, Woodhouse Systems Inc. with a bank account at

---

[1] According to Sunbiz.org, Michael Scheutt is one of several Vice Presidents fro US AG 21 Inc.

Regions Bank, Mathews Trade Corporation with a bank account at BB&T Bank, South Florida Payroll Co. with a bank account at Iberia Bank, and Internet Payment Services Group Inc. with a bank account at Royal Bank of Canada.

7.   This investigation reveals that Schuett has approximately forty (40) accounts with Bank of America and that since November 1, 2007, Schuett has been involved in the receipt by international wire transfer, and subsequent transfer to approximately 23,000 persons living primarily in the United States of monies, collectively (in and out) totaling approximately $70,000,000.00.  As a result, numerous banking institutions throughout the State of Florida have closed accounts associated with Schuett.

8.   This investigation reveals that overseas wire transfers of money have come into accounts controlled by Schuett.  Schuett then obtains large numbers of cashier's checks, writes business checks and/or provides outgoing monetary wire transfers to various persons and entities in the United States and Canada.

9.   Further, there is reason to believe that Schuett is involved with one or more on-line gambling organization(s) and has facilitated the distribution of gambling proceeds to persons located throughout the United States and Canada. Schuett receives wire transfers of large amounts of money into bank accounts he controls through companies he has established, from Bluetool LTD, 34 Rosedale Ave, Blackhill Consett Co. Durham DH8 0DZ United Kingdom; International Payment Systems (IPS); and RECHTSANWAELTE HANTKE HILLER Germany.  Schuett then transfers funds into other bank accounts from which Schuett provides large numbers of checks to people across the United

4

States and Canada, usually by Federal Express.

10.  On several occasions, recipients of the checks have advised bank tellers and bank investigators that the checks they received from Schuett's companies are winnings from on-line gambling.  On one occasion, the Bank of Florida Southwest call center received a call from a person in possession of a check dated January 5, 2010, in the amount of $430.95, drawn on an account in the name of MCM Capital Management Inc., a company operated by Schuett. The check holder was calling to inquire about the availability of funds and advised call center personnel that he received the check as a result of playing on-line poker at www.ultimatebet.com.  On January 8, 2010, a manager at Bank of Florida Southwest called Schuett and asked if his company was operating an online gambling business or website.  Schuett denied being involved with any online gambling website operations.

### US AG 24 Inc.

11.  Schuett and others appear to have filed or caused to be filed papers to incorporate US AG 24 Inc. (USAG24), in Florida, on April 26, 2006.  Schuett is specifically identified as the Vice President of USAG24.  According to the USAG24 website, www.usag24.com, "US AG 24 Inc. offers you the full spectrum of services for establishing your corporation in the USA - at affordable prices." The website states the following:

> Full service support for establishing corporations in the USA
> US AG 24 Inc. is an internationally operating service provider in the area of business consulting, specifically with regard to establishing corporations in the USA. Backing US AG 24 Inc. is an association of lawyers, notaries public, tax advisers and business consultants

who will provide you with comprehensive advice and support
before, during and after you establish your corporation. This
association of expert professionals guarantees that you will be able
to take full advantage of the many benefits that a US-Corporation
offers.

Another unique service provided by USAG24 is found on their website called a

"Shelf Company" (Shell Company). The website seems to indicate individuals

can purchase established U.S. companies and/or U.S. bank accounts. The

website states, "Inventory of US Companies - The companies listed below are

existing companies for which the federal fees (UBR Report) have not been paid,

and which are therefore available for sale...." See the attached Exhibit 1.

12. A review of the State of Florida, Division of Corporation website

revealed all the above listed "Shelf Companies" are Florida corporations

incorporated by USAG24.

13. As stated earlier, agents identified several corporations incorporated

by USAG24 and under the control or direction of Schuett and others, specific to

this affidavit and further used to conduct money transmitting activities in violation

of Title 18, United States Code, Section 1960. A public search on the Florida

Department of State, Division of Corporations website of registered corporations

revealed USAG24 (Schuett) appeared to have filed or caused to be filed papers

to incorporate MCM Capital Management Corporation ("MCM"), in Bradenton,

Florida, on or about March 20, 2009. Further, USAG24 appeared to have filed or

caused to be filed papers to incorporate MIGlobal Inc. ("MIG"), in Bradenton,

Florida, on or about May 6, 2009. Further, USAG24 appeared to file or caused to

be filed papers to incorporate South Naples Escrow Company ("SNE"), in

6

Naples, Florida, on or about October 21, 2009. Further, USAG24 appeared to file or caused to be filed papers to incorporate Southwest Florida Payroll Company ("SWFP"), in Bradenton, Florida, on or about November 2, 2009, and Woodhouse Systems Inc. ("WSI"), in Bradenton, Florida, on or about March 3, 2009. Further, USAG24 appeared to file or caused to be filed papers to incorporate South Florida Payroll Company ("SFP"), in Bradenton, Florida, on or about November 2, 2009. Further, USAG24 appeared to file or caused to be filed papers to incorporate Mathews Trade Corporation ("MTC"), in Naples, Florida, on or about July 7, 2009. Finally, USAG24 appeared to file or caused to be filed papers to incorporate Internet Payment Services Group Inc. ("IPSG"), in Bradenton, Florida, on or about September 25, 2009.

14. An online search through www.sunbiz.org of the Florida Department of State, Division of Corporations revealed that US AG 24 Inc. is the officer and registered agent for approximately four hundred and twenty four (424) business entities in the State of Florida. Schuett is the registered agent for US AG 24 Inc. An Area Financial Manager with the State of Florida, Bureau of Financial Investigations, advised that neither Schuett nor his companies have ever registered with the State of Florida as a money transmitting business.

**Applicable Law**

15. Title 18, United States Code, Section 1960 provides that:

> (a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

7

(b) As used in this section

(1) The term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

> (C) Otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

(2) The term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier.

16.  A "money transmitting business" is further defined in Title 31, United States Code, section 5330, as including "any business other than the United States Postal Service which - (A) provides check cashing, currency exchange, or money transmitting or remittance services."

17.  The Florida Money Transmitter's Code, Fla. Stat. §§ 560.101 and 560.408, prohibit a person from engaging in the business of a money transmitter without registering with the Office of Financial Regulation.  Fla. Stat. § 560.125(1).  Schuett has never registered any of his companies with the Office of Financial Regulation and is currently operating MI Global Inc., MCM Capital

Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc. without a license.  Violation of the money transmitter statue under Florida law is a felony. The penalties for violating this statute are as follows: (1) if currency or payment instruments exceed $300 but are less than $20,000 in any 12 month period, the person has committed a third degree felony; (2) if currency or payment instruments total or exceed $20,000 but are less than $100,000 in any 12 month period, the person has committed a second degree felony; and (3) if currency or payment instruments total or exceed $100,000, the person has committed a first degree felony.  Fla. Stat. § 560.125(5)(a) (c).

18.  Under the Florida Money Transmitters' Code, the term "money transmitter" includes any person located in or doing business in Florida who acts as a payment instrument seller, foreign currency exchanger, check casher, funds transmitter, or deferred presentment provider."  Fla. Stat. § 560.103(11).  The term "funds transmitter" includes "any person who engages in the receipt of currency or payment instruments for the purpose of transmission by any means, including transmissions within this country or to or from locations outside this country, by wire, facsimile, electronic transfer, courier, or otherwise."  Fla. Stat. § 560.103(10).

## Evidence of a Money Transmitting Business

19.  As mentioned above, MI Global Inc., MCM Capital, US AG 24 Inc., South Naples Escrow Company, South West Florida Payroll Company, South

Florida Payroll Company, Woodhouse Systems, Inc., Mathews Trade Corporation, and Internet Payment Services Group Inc. are each companies for which Schuett is the incorporator and acts as funds transmitter. Bank documents and bank investigative inquiries show that Schuett's companies are involved in the transmitting and remitting of funds to third parties on behalf of foreign corporations, to include the pay out of winnings from online gambling. Thus, Schuett's companies are operating as a money transmitting business.

20. For purposes of Title 18, United States Code, Section 1960(b)(1)(B), a money transmitting business is required to register by filing the appropriate information with the Financial Crimes Enforcement Network ("FinCEN"), an agency within the Department of Treasury. 31 U.S.C. § 5330(a), 31 C.F.R. § 103.41(a)(1) and (b). At this time neither MI Global Inc., MCM Capital Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., nor Internet Payment Services Group Inc. have registered with FinCEN.

21. Thus, MI Global Inc., MCM Capital Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc. are each operating in violation of 18 U.S.C. § 1960(b)(1)(A) because they each operate without an appropriate money transmitting license in Florida and have failed to register with the Office of Financial Regulation. Such failure is punishable under State law in Florida as a

felony. Additionally, Schuetts' companies, MI Global Inc., MCM Capital Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc. operate in violation of 18 U.S.C. § 1960(b)(1)(B) because they have failed to register with FinCEN in violation of 31 U.S.C. § 5330.

22. Businesses registered with either FinCEN or the Florida Department of Financial Regulation are required to establish anti-money laundering programs. Such programs are required of properly registered money transmitting businesses. Specifically, 31 U.S.C. § 5318(h), requires that all financial institutions shall establish an anti-money laundering program, to minimally include:

(A) The development of internal policies, procedures, and controls;
(B) The designation of a compliance officer;
(C) An ongoing employee training program; and
(D) An independent audit function to test programs.

23. The term "financial institution" includes both "a currency exchange" and a "person who engages as a business in the transmission of funds." 31 U.S.C. § 5312(a)(2)(J) and (R). More specific requirements relating to the anti-money laundering program required of a money service business are contained in regulations issued by the Department of the Treasury at 31 C.F.R. § 103.125. As a result of not having these safeguards in place, MI Global Inc., MCM Capital Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc. each subject themselves to possible criminal activity.

11

24.  On or about the dates listed in the chart below, in furtherance of the goal to operate as an unlicensed money transmitting business, MI Global Inc., MCM Capital Management Inc., US AG 24 Inc., South Naples Escrow Company, Southwest Florida Payroll Co., Woodhouse Systems Inc., Mathews Trade Corporation, South Florida Payroll Co., and Internet Payment Services Group Inc., and/or Schuett transferred/deposited and caused to be transferred/deposited the sums indicated to and from banks located in the Middle District of Florida and the domestic United States:

| Date | Amount | Originator | Beneficiary |
|---|---|---|---|
| 11/24/2009 | $849,379.48 | South Naples Escrow Co., Shamrock Bank cashier's check #00149 | MCM Capital Management Corp., account no. xxxxxxxxxx8807 at Bank of Florida Southwest, Naples, Florida |
| 12/01/2009 | $103,537.12 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MIGlobal Inc., account no. xxxxxxxx9054 at Bank of America, Naples, Florida |
| 12/03/2009 | $136,187.89 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MIGlobal Inc., account no. xxxxxxxx9054 at Bank of America, Naples, Florida |
| 12/09/2009 | $123,538.86 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MIGlobal Inc., account no. xxxxxxxx9054 at Bank of America, Naples, Florida |

| 12/17/2009 | $156,785.89 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MIGlobal Inc., account no. xxxxxxxx9054 at Bank of America, Naples, Florida |
|---|---|---|---|
| 12/17/2009 | $141,759.78 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MIGlobal Inc., account no. xxxxxxxx9054 at Bank of America, Naples, Florida |
| 12/28/2009 | $112,456.78 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MCM Capital Management Corp., account no. xxxxxxxxxx8807 at Bank of Florida Southwest, Naples, Florida |
| 12/29/2009 | $154,312.65 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MCM Capital Management Corp., account no. xxxxxxxxxx8807 at Bank of Florida Southwest, Naples, Florida |
| 01/07/2010 | $102,316.12 | Bluetool Ltd., Wirecard Bank AG, Grasbrunn, Germany | MCM Capital Management Corp., account no. xxxxxxxxxx8807 at Bank of Florida Southwest, Naples, Florida |

| 01/21/2010 | $248,149.81 | Michael Schuett, Bank of Florida cashier's check #022163 | MCM Capital Management Corp., account no. xxxxxxxxxx8807 at Bank of Florida Southwest, Naples, Florida |
|---|---|---|---|

25. As a result of the investigation described herein, among other objects, the government seeks seizure of all funds on deposit in account number xxxxxxxx3940 in the name of Michael Schuett at Bank of America; account number xxxxxxxx9613 in the name of MCM Capital Management Corp. at Bank of America; account number xxxxxxxx9054 in the name of MI Global Inc. at Bank of America; account number xxxxxx5422 in the name of South Naples Escrow Company at Ironstone Bank; account number xxxxxxxxx6031 in the name of Southwest Florida Payroll Co. at SunTrust Bank; account number xxxxx9070 in the name of Woodhouse Systems at Regions Bank; account number xxxxxx5997 in the name of Mathews Trade Corp. at BB&T Bank; account number xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank; and account xxxxxx2644 in the name of Internet Payment Services Group Inc. at Royal Bank of Canada. Additionally, the government seeks a seizure warrant for a 2009 Audi Q7 Vehicle, Identification Number (VIN) WA1AY74L29D023600, Florida Tag USAG24, Registered to Michael Schuett; and three Rolex watches, namely a stainless steel Milgauss and two Black Dial Stainless Steel Daytona models. Your affiant asserts that these bank accounts, vehicle and watches are subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) [civil forfeiture of

14



property] and Title 18, United States Code, Section 982(a)(1) [criminal forfeiture of property], because they constitute or are derived from proceeds traceable to a violation of the prohibition of an unlicensed money transmitting businesses as provided in Title 18, United States Code, Section 1960.

26.    On February 3, 2010, your affiant spoke with officials at Wachovia Bank and Wells Fargo Financial Intelligence Unit (FIU).  FIU identified International Payment Systems Corp. (IPS Corp.) and EPF LTD & CO. KG, as being involved in the processing of money transfers collectively totaling in the millions of dollars to thousands of persons living primarily in the United States.  IPS Corp. is owned by parent company US AG 24 Inc., a company owned by Schuett.  US AG 24 Inc. has a reported address of 3001 N. Rocky Point Drive East, 2nd Floor Tampa, FL 33607.  IPS Corp. maintains a registered address of 1903 60th Place, M-3327, Bradenton, FL 34303.  This address belongs to a mail forwarding service.  However, as of January 25, 2010, the address of IPS Corp. was changed from 1903 60th Place, M-3327, Bradenton, FL 34303 to the subject premises to be searched, 1378 Chesapeake Ave, Naples, FL 34102.  As mentioned before, this investigation reveals that Schuett resides at the subject premises, 1378 Chesapeake Ave, Naples, Florida 34102.

27.    Between August 13, 2009, and December 1, 2009, a United Kingdom based corporation, Bluetool LTD.,[2] initiated twenty-eight (28) monetary wire transfers totaling approximately $7,312,710.82 USD to bank accounts in the names of companies

---

[2] Agent contacted the United Kingdom's Metropolitan Police Service regarding Bluetool LTD.  According to British authorities, Bluetool LTD. was incorporated within the last 6 months with no information on file reference business type or activity.

controlled by Schuett. These monetary wires ranged in the amounts from $125,601.00 to $407,678.12. It appears online gambling companies are using Bluetool LTD. as an intermediary to transfer funds to U.S. based money transmitters in order to pay gambling winnings to U.S. based online customers.[3] One such money transmitter appears to be Schuett and his companies. Online research suggests that many of the customers are online poker players.

28. On February 2, 2010, your affiant spoke with an officer at CNL Bank located in Orlando, Florida, who advised that between June 19, 2008, through September 24, 2008, Schuett opened eleven (11) or more business bank accounts. The officer advised that only a few of the accounts had activity in them, and that the others remained open with no activity. The officer advised that Schuett used the address of 3001 N Rocky Point Drive East, 2nd Floor, Tampa, FL 33607 for these accounts.

29. On May 22, 2009, Schuett opened business account # XXXXXX2758 in the name of IPS Corp. at Fifth Third Bank in Naples, Florida; Schuett is the only signatory on the account. Review by your affiant of records generated from May 22, 2009, through September 9, 2009, for such account revealed twenty-seven (27) incoming wire transfers totaling approximately $2,174,770.98.

a. Such transactions are as follows:

---

[3]According to the website, www.ultimatebet.com ("UB"), U.S. based online gambling customers can fund and debit their UB accounts via a bank account at Wirecard Bank AG, Bretonischer Ring 4, 85630 Grasbrunn, Germany. Customers are told to wire funds to Wirecard Bank AG account. Customers also have the option of receiving payouts from UB via check. According to IronStone Bank bank records, UB sends a wire, via Wirecard Bank, to Bluetool LTD. for check distribution. Bank records further show Schuett receives funds from Bluetool LTD., via Wirecard Bank, and distributes checks to third parties.

16



| Date | Amount | Originator | Bank | Country |
|---|---|---|---|---|
| 6/17/2009 | $ 400.78 | IPS | Banque Des Mascaregnes | Mauritius |
| 7/14/2009 | $ 5,148.89 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 7/17/2009 | $ 12,648.89 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 7/21/2009 | $ 39,513.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 7/23/2009 | $ 35,648.78 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 7/29/2009 | $ 100.12 | RECHTSANWAELTE HANTKE HILLER | Wirecard Bank AG | Germany |
| 7/29/2009 | $ 300.19 | RECHTSANWAELTE HANTKE HILLER | DZ Bank AG | Germany |
| 8/11/2009 | $ 32,806.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/12/2009 | $ 45,648.89 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/17/2009 | $ 65,330.86 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/18/2009 | $ 75,350.86 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/19/2009 | $ 45,648.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/21/2009 | $ 51,648.89 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/24/2009 | $ 94,845.01 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/26/2009 | $130,745.72 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/27/2009 | $123,106.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/28/2009 | $ 80,537.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 8/31/2009 | $145,832.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/2/2009 | $ 89,642.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/3/2009 | $123,759.67 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/4/2009 | $278,285.78 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/8/2009 | $ 89,537.89 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/8/2009 | $256,426.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |
| 9/9/2009 | $158,332.12 | BLUETOOL LTD | Wirecard Bank AG | Germany |

b.  Review by your affiant of the withdrawals from this account revealed that approximately Two Thousand Five Hundred and Eight (2,508) checks were written from the account totaling approximately $1,859,978.25.

c.      This business account # XXXXXX2758 in the name of IPS Corp. at FifthThird Bank in Naples, Florida, was closed on September 30, 2009.

30.  US 24 Group LLC has business checking account # XXXXXX6399 at Fifth Third Bank.  A search via sunbiz.org revealed that the registered agent for US 24 Group LLC is US AG 24 Inc., a company controlled by Schuett, as mentioned before.  Review of the deposit activity for this account showed seven (7) checks totaling $42,248.00

deposited into the account. The checks deposited into this account were from accounts at Bank of America in the name of US AG 24 Inc. for $360.00, Shootle Mediation for $10,000.00 and Internet Payment Service Group Inc. for $10,000.00, $6,948.00 and $948.00.

31.  Additionally, Schuett caused two (2) Fifth Third cashier's check to be purchased. One such check, made payable to Porsche Naples in the amount of $10,000.00, was deposited back into business checking account # XXXXXX6399. A second check in the amount of $5,969.50 was made payable to and negotiated at Mayors Jewelers Inc. Further, although this business checking account # XXXXXX6399 was closed on September 30, 2009, Schuett still controls numerous other bank accounts at Fifth Third Bank.

32.  Review of account activity for the period October 1, through November 4, 2009, for business checking account number XXXXXX5849 in the name of MCM Capital Management Corporation at Wachovia Bank, with an address of 1378 Chesapeake Avenue, Naples FL 14102,  revealed fifteen (15) incoming monetary wire transfers all originating from Bluetool LTD via Wirecard Bank AG totaling $2,166,717.40.

a.  Those incoming wire transfers are as follows:

| Date | Amount |
|---|---|
| 10/1/2009 | $  156,280.30 |
| 10/2/2009 | $  167,867.32 |
| 10/6/2009 | $    69,646.32 |
| 10/8/2009 | $    89,658.12 |
| 10/8/2009 | $    93,202.12 |
| 10/9/2009 | $    96,547.12 |
| 10/13/2009 | $  101,639.12 |
| 10/13/2009 | $  219,296.12 |
| 10/19/2009 | $  123,417.12 |
| 10/20/2009 | $  221,570.12 |



| | | |
|---|---|---|
| 10/21/2009 | $ | 218,639.12 |
| 10/21/2009 | $ | 167,871.34 |
| 10/29/2009 | $ | 8,658.12 |
| 10/30/2009 | $ | 204,658.13 |
| 11/4/2009 | $ | 227,547.12 |
| **Total** | | **$2,166,717.40** |

b.  From October 20, 2009, through November 18, 2009, eleven (11) checks were deposited into business checking account number XXXXXX5849 in the name of MCM Capital Management Corporation at Wachovia Bank.  On October 20, 2009, a cashiers check drawn on Fifth Third Bank, payable to Internet Payment Service in the amount of $31,907.91 was deposited into the account.  From November 3, 2009, through November 18, 2009, five (5) Shamrock Bank cashiers checks totaling $1,306,715.80 issued on an account in the name of South Naples Escrow Company were deposited into account number XXXXXX5849 at Wachovia Bank in the name of MCM Capital Management Inc.  Schuett is the principal for South Naples Escrow Company as well as MCM Capital Management Inc.  On October 29, 2009, two (2) Shamrock Bank checks totaling $457,801.24 were deposited into account number XXXXXX5849 at Wachovia Bank in the name of MCM Capital Management Inc.

c.  During a conversation between Schuett and an officer of Wachovia Bank on November 13, 2009, Schuett advised the bank officer that he services Bluetool LTD., paying commissions to United States and Canadian citizens who use Bluetool's website.  Schuett advised the bank officer that it is cheaper and more secure to issue checks than to wire transfer the money.  During such conversation, the bank officer advised Schuett, based on activities in account number XXXXXX5849 at Wachovia

19

Bank in the name of MCM Capital Management Inc., that she believed Schuett was operating an online gambling company. Schuett replied to the affect, "Well, it's not like it's illegal." The officer then informed Schuett that online gambling in the United States is illegal and advised Schuett that she was going to close his account immediately. Schuett responded: "Okay. Give me two weeks to settle my accounts." Schuett advised the bank officer that he would be transferring his banking activities to Shamrock Bank in Naples, Florida. This investigation reveals that at the time of this conversation, Schuett had already opened an account at Shamrock Bank, on October 23, 2009.

d. The Wachovia Bank officer advised your affiant that she held conversations with three people who had received checks issued on account number XXXXXX5849 at Wachovia Bank in the name of MCM Capital Management Inc. Two people advised the bank officer that the checks represented winnings from internet gambling poker gaming sites; a third customer refused to explain and left the bank without cashing the check. Additionally, the Wachovia Bank officer advised that on November 17 and 18, 2009, she received multiple calls from Wachovia Bank customers who advised that they wanted to cash checks issued on account # XXXXXX5849 at Wachovia Bank in the name of MCM Capital Management Corp. One such customer, whose check was in the amount of $5,000.00, advised the bank officer that the check represented his winnings from internet gambling.

33. Federal Express (FedEx) employees became suspicious of Schuett's activity when Schuett began mailing over 150 parcels per week. FedEx employees opened several of the parcels and determined that each contained a check. The checks varied in amounts payable and were being mailed to addresses throughout the United States.

FedEx conducts daily business at Schuett's residence/place of business located at 1378 Chesapeake Ave, Naples, FL 34102 (the subject premises) picking up an average of fifty-one (51) parcels per day. Schuett has what is called a POWERSHIP device at the subject premises that is FedEx property. This machine allows Schuett to print FedEx labels. FedEx can monitor the remote labeling activities for logistical purposes and is thus aware of Schuett's current activities at the subject premises. Below is a summary of recent FedEx activity from the subject premises:

2/5 – 14 packages sent

2/6 – 0

2/7 – 0

2/8 – 51

2/9 – 31

2/10 – 12

2/11 – 23 labels printed but not sent as of last communication with FedEx to agent(s) involved in this investigation.

34. On October 23, 2009, Schuett opened checking account number XXXXXX5867 at Shamrock Bank in the name of South Naples Escrow Company. Schuett informed Shamrock Bank employee(s) that the purpose of the account was to transact real estate purchases in Florida for German nationals. Schuett informed Shamrock Bank employee(s) that the projected account activity would be incoming monetary wires transfers from foreign sources and that he would then either initiate outgoing monetary wire transfers or purchase cashier's checks. According to Shamrock Bank employee(s), this account was very active, but the activity was not consistent with

21

an account associated with real estate transactions; according to the bankers, such an account would have checks going to title companies and this account did not.

a. From October 26 through December 7, 2009, twenty three (23) monetary wire transfers were received into the account totaling $5,723,893.27. For each of these transfers, the sender was Standard Chart, the originator was Bluetool LTD. and the originating financial institution was Wirecard Bank, as set forth below:

| Date | Incoming Wires Sender | October 26 - December 7, 2009 Originator | Originating F.I. | Amount |
|------|------------------------|-------------------------------------------|-------------------|--------|
| 10/26/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 70,793.12 |
| 10/27/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 203,537.12 |
| 10/28/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 207,865.12 |
| 10/29/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 389,759.12 |
| 11/3/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 289,537.12 |
| 11/5/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 356,759.67 |
| 11/6/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 189,537.12 |
| 11/10/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 201,295.15 |
| 11/10/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 389,648.12 |
| 11/12/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 169,759.15 |
| 11/12/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 246,648.12 |
| 11/16/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 178,648.12 |
| 11/16/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 201,537.12 |
| 11/18/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 234,537.12 |
| 11/19/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 234,759.19 |
| 11/24/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 278,648.18 |
| 11/25/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 278,957.12 |
| 11/30/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 255,426.12 |
| 12/1/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 201,648.12 |
| 12/2/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 289,648.89 |
| 12/3/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 276,537.12 |
| 12/4/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 278,648.12 |
| 12/7/2009 | Standard Chart | Bluetool LTD | WireCard Bank | $ 299,759.12 |
| | | | Total | $5,723,893.27 |

b. From October 26 through December 7, 2009, the account originated eight (8) outgoing monetary wire transfers totaling $2,228,905.73. Five of the outgoing monetary wire transfers were to account # xxxxxxxx9613 at Bank of America in the name of MI Global Inc. Three (3) of the outgoing wires were to RBC account # XXXXXX2644 in the



name of International Payment Group. RBC bank is located in Canada, and has a branch in Naples, Florida. Such outgoing monetary wire transfers are summarized as follows:

| Date | Outgoing Wires Receiving F.I. | November 25 - December 10, 2009 Beneficiary | Amount |
|---|---|---|---|
| 11/25/2009 | Bank of America | MI Global Inc. | $ 278,678.12 |
| 12/1/2009 | RBC Bank | International Payment Group | $ 255,466.12 |
| 12/1/2009 | Bank of America | MI Global Inc. | $ 480,366.24 |
| 12/4/2009 | Bank of America | MI Global Inc. | $ 259,678.89 |
| 12/4/2009 | RBC Bank | Independent Payment Service | $ 108,306.91 |
| 12/8/2009 | Bank of America | MI Global Inc. | $ 276,567.12 |
| 12/10/2009 | RBC Bank | International Payment Group | $ 115,295.21 |
| 12/10/2009 | Bank of America | MI Global Inc. | $ 453,567.12 |
| | | **Total** | $2,228,905.73 |

c. Additionally, twenty (20) checks were issued on the account, eleven (11) of which were cashiers checks issued to MCM Capital Management Inc., MI Global Inc., International Payment Service Group, Internet Payment Services, or US AG 24 Inc., as set forth below:

| Date | Check Number | CHECKS Payable To | Amount | |
|---|---|---|---|---|
| 10/26/2009 | Counter Check | MCM Capital Management | $ 70,000.00 | |
| 10/27/2009 | Counter Check | MCM Capital Management | $ 187,899.12 | Purchase Cashiers Check |
| 10/28/2009 | 1002 | MCM Capital Management | $ 198,678.12 | Purchase Cashiers Check |
| 10/29/2009 | Counter Check | MCM Capital Management | $ 387,789.12 | Purchase Cashiers Check |
| 10/29/2009 | 1003 | MI Global | $ 67,178.12 | |
| 11/3/2009 | Counter Check | International Payment Service Group | $ 42,000.00 | |
| 11/3/2009 | Counter Check | MCM Capital Management | $ 201,567.12 | Purchase Cashiers Check |
| 11/4/2009 | 1006 | MI Global | $ 44,000.00 | |
| 11/9/2009 | 1008 | MCM Capital Management | $ 259,123.12 | Purchase Cashiers Check |
| 11/9/2009 | 1009 | MI Global | $ 45,000.00 | |
| 11/9/2009 | 1010 | Internet Payment Services | $ 45,000.00 | |
| 11/12/2009 | 1011 | MCM Capital Management | $ 189,567.12 | Purchase Cashiers Check |
| 11/12/2009 | 1012 | MCM Capital Management | $ 298,789.12 | Purchase Cashiers Check |
| 11/12/2009 | 1014 | MCM Capital Management | $ 201,345.15 | Purchase Cashiers Check |
| 11/12/2009 | 1013 | MI Global | $ 99,678.12 | |
| 11/18/2009 | 1015 | MCM Capital Management | $ 415,467.27 | Purchase Cashiers Check |
| 11/24/2009 | Counter Check | MCM Capital Management | $ 849,379.48 | Purchase Cashiers Check |

| 12/1/2209 | 1017 | US AG 24 | $ 12,669.47 | |
| 12/1/2009 | 1018 | Olaf Brand or Michael Schuett | $ 24,812.00 | Endorsed by Michael Sch |
| 12/11/2009 | Counter Check | South Naples Escrow Company | $ 23,172.00 | Closing Withdrawal |
| | | **Total** | **$3,663,094.45** | |

d. When asked about this unusual account activity in November of 2009, Schuett advised a Shamrock Bank manager that, as he had explained previously to Shamrock Bank employees, the account activity was from real estate activity. On December 2, 2009, a Shamrock Bank manager contacted Schuett and advised him that the account would be closed due to large volume of unusual activity in the account.

35. On February 3, 2010, Bank of Florida Southwest alerted your affiant that a banking relationship with MCM Capital Management Corporation, for which Schuett was the only signatory, was terminated on January 10, 2010, for suspected internet gambling. On November 19, 2009, Schuett opened business account # XXXXXX2807 at Bank of Florida Southwest in the name of MCM Capital Management Corp. MCM Capital Management Corp. is owned by US AG 24 Inc. with a recorded address of 3001 Rocky Point Drive East 2nd Floor Tampa, Florida. Schuett advised a bank employee that MCM Management Capital Corp. works as a investment consultant and invests money for individuals. Schuett told the banker that MCM Management Capital Corp. advertises on several websites and that the main company, which handles all the finances, is located in Europe.

a. Bank of Florida Southwest records for account # XXXXXX2807 in the name of MCM Capital Corp. reflect the following deposit activity:

November 19, 2009 Deposit    $100.00 (Cash)
November 24, 2009 Deposit    Cashiers check in the amount of $849,379.48

24



The deposited cashiers check was check number 001496 issued by Shamrock Bank on November 24, 2009, the remitter for which was Schuett's South Naples Escrow Company. Additionally, from December 2, 2009, through January 8, 2010, twelve (12) incoming monetary wire transfers totaling of $1,111,192.76 posted to account # XXXXXX2807 at Bank of Florida Southwest in the name of MCM Capital Management Corp. Three (3) incoming monetary wire transfers were from account #XXXXXX1576 at Northern Trust Bank of Miami in the name of South Naples Escrow Company located at the subject premises, 1378 Chesapeake Ave, Naples FL. The wires transfers are as follows:

| | |
|---|---|
| December 28, 2009 | $100,000.76 |
| December 30, 2009 | $ 89,748.59 |
| January 10, 2009 | $ 90,000.05 |

Nine of the incoming monetary wire transfers were from an account in the name of Bluetool LTD. at Instruction Financial Institution located at West LB AG, Harzogstrasse 15-40217, Deusseldorf, Germany. The originating client was Bluetool LTD. The wire transfers are as follows:

| | | |
|---|---|---|
| December 4, 2009 | $ 1,098.67 | Bluetool |
| December 17, 2009 | $ 89,606.12 | Bluetool |
| December 17, 2009 | $ 94,567.14 | Bluetool |
| December 18, 2009 | $ 77,532.90 | Bluetool |
| December 21, 2009 | $101,236.12 | Bluetool |
| December 22, 2009 | $ 98,316.86 | Bluetool |
| December 28, 2009 | $112,456.78 | Bluetool |
| December 29, 2009 | $154,312.65 | Bluetool |
| January 17, 2010 | $102,316.12 | Bluetool |

b. From December 2, 2009, through January 8, 2010, One Thousand Four Hundred and Ninety Three (1,493) checks totaling $1,799,144.85 were issued on this account. The checks ranged in amounts from $7.01 to $6,000.11 and were payable to



various persons located throughout the United States.

    c.  A Bank of Florida Southwest manager advised Schuett that bank employees suspected that transactions posting to the account were related to internet gambling and that the account would therefore be closed.  Schuett advised the bank manager that he already had an account opened at another bank, ready in the event that this account would be closed.  Account # XXXXXX2807 at Bank of Florida Southwest in the name of MCM Capital Management Corp. was in fact closed on January 12, 2010. Bank of Florida Southwest cashier's check #22163 payable to MCM Capital Management Corp. in the amount of $248,149.81 was then deposited into Bank of America account number xxxxxxxx9613 in the name of MCM Capital Management Corp.

    36.  Since March 1, 2007, Schuett has opened over forty (40) accounts with Bank of America.  Schuett is currently using account # xxxxxxxx9613 in the name of MCM Capital Management Corp and account # xxxxxxxx9054 in the name of MI Global Inc. at the Bank of America, account #xxxxxx5422 in the name of South Naples Escrow Co at Ironstone Bank; account number xxxxxxxxx6031 in the name of Southwest Florida Payroll Co. at SunTrust Bank; account number xxxxx9070 in the name of Woodhouse Systems at Regions Bank; account number xxxxxx5997 in the name of Mathews Trade Corp. at BB&T Bank; and account number xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank to conduct his money transmitting business.

### Bank of America Account Number xxxxxxxx9613

    37.  On January 22, 2010, Schuett deposited Bank of Florida Southwest



cashier's check number 22163 in the amount of $248,149.81 into account # xxxxxxxx9613 at Bank of America in the name of MCM Capital Management Corp. Such account was established on January 22, 2010. Bank records indicate that Schuett is the contact person on the account and is President of MCM Capital Management Corp. Schuett advised Bank of America employees that MCM Capital Management Inc. engages in financial consulting.

38. As of Friday, February 12, 2010, this bank account had a current balance of $142,779.86.

## Bank of America Account Number xxxxxxxx9054

39. Schuett established Bank of America account # xxxxxxxx9054 in the name of MI Global Inc. on September 9, 2009. From September 9, 2009, through February 2, 2010, the account received approximately fifty-eight (58) incoming monetary wire transfers totaling approximately $7,472,841.32. Forty-six (46) monetary wire transfers were from Bluetool LTD. totaling $4,681,655.90. South Naples Escrow Company initiated twelve (12) monetary wire transfers totaling $2,791,185.42 into account # xxxxxxxx9054 in the name of MI Global Inc., and three monetary wire transfers were from counter credits.



40.. From September 9, 2009, through December 31, 2009, 6,156 withdrawals/debits, ranging in amounts from approximately $50.00 to $5,001.00 were initiated from the account, including the following:

Two checks payable to Michael Schuett and or Olaf Brand totaling $17,344.00;

Two checks payable to US AG 24 Inc. totaling $16,783.06;

Four checks payable to a Corey Drury totaling $20,000.87 (Drury's facebook account suggests that Drury is employed with Absolute Poker, Full Tilt Poker, and Pokerstars as a mid/high stakes card player);

Three checks payable to Darren Elias totaling $15,000.43 (Elias is listed on the following poker websites: www.poketfives.com, www.bluffmagazine.com, www.cardplayer.com and www.pokerpages.com);

Four checks payable to Derek Dubois totaling $20,000.61 (Open source online research found Dubois listed on www.bluffmagazine.com);

Three checks payable to Jacob Baumgartner totaling $15,000.38; and,

Six checks payable to Sean Deacon totaling $30,000.77.

41.  Bank of America account statements issued to Schuett including a warning clearly printed on the first page, to-wit:

"Bank of America would like to remind our small business account holders that accounts may not be used for illegal transactions, for example those prohibited by the Unlawful Internet Gambling Enforcement Act 31 U.S.C. Section 5361 et. seq."



42. As of Friday, February 12, 2010, this bank account had a current balance of $475,384.00.

## Bank of America Account Number xxxxxxxx3940

43. On or about November 30, 2009, Schuett deposited a check in the amount of $24,812 drawn on account number XXXXXXX6383 at Shamrock Bank in the name of South Naples Escrow Company into Bank of America account # xxxxxxxx3940 in the name of Michael Schuett.

44. On January 20, 2010, Schuett deposited a check in the amount of $20,000.00 drawn on account # XXXXXX8973 at Bank of America in the name of US AG 24 Inc. into account # xxxxxxxx3940 at Bank of America in the name of Michael Schuett.

45. On January 25, 2010, Schuett deposited two checks totaling $10,206.40 from account #XXXXXX8973 at Bank of America in the name of US AG 24 Inc. into account # xxxxxxxx3940 at Bank of America in the name of Michael Schuett.

46. As of Friday, February 12, 2010, this bank account had a current balance of $9,310.00.

## IronStone Bank Account Number xxxxxx5422

47. Schuett opened account # xxxxxx5422 in the name of South Naples Escrow Company at IronStone Bank on January 15, 2010. A review of bank records indicates that Schuett conducted monetary wire transfers from account # xxxxxx5422 at IronStone Bank in the name of South Naples Escrow Company to account # xxxxxxxx9054 at Bank of America in the name of MI Global Inc.

48. As of Friday, February 12, 2010, this bank account had a current balance of



$215,800.88.

**SunTrust Account Number xxxxxxxxx6031**

49.  On February 2, 2010, a SunTrust Bank employee advised as follows:

On November 9, 2009, account no. xxxxxxxxx6031 was opened by "Michael Olaf

Schutt" (spelled as it appears on his passport) in the name of Southwest Florida Payroll

Co. at SunTrust Bank located at 3315 Davis Blvd. Naples, FL 34104. The address

indicated on this account is the subject premises located at 1378 Chesapeake Ave.

Naples, FL 34104.  From November 9, 2009 to present, account number

xxxxxxxxx6031 in the name of Southwest Florida Payroll Co. at SunTrust Bank received

approximately twenty-nine (29) incoming monetary wire transfers from Bluetool Ltd.

Approximately 400 checks have been written from account number xxxxxxxxx6031 in

the name of Southwest Florida Payroll Co.

50.  As of Thursday, February 11, 2010, this bank account had a current balance

of $456,428.71.

**Regions Bank Account Number xxxxx9070**

51.  On February 2, 2010, a Regions Bank employee advised as follows:

On November 10, 2009, Schuett opened account number xxxxx9070 in the name

of Woodhouse Systems Inc. at Regions Bank, located at 7405 Devonshire Blvd, Naples,

FL 34104. The address given for this account is the subject premises located 1378

Chesapeake Ave. Naples, FL 34104.  This account receives monetary wire transfers

from Bluetool LTD; Schuett then writes large numbers of checks drawn on account

number xxxxx9070 in the name of Woodhouse Systems at Regions Bank.

30



52.  As of Friday, February 12, 2010, this bank account had a current balance of $255,020.41.

**BB&T Bank Account Number xxxxxx5997**

53.  On February 2, 2010, a representative of BB&T Bank advised that Schuett opened account xxxxxx5997 in the name of Mathews Trade Corp. at BB&T Bank at 7379 E. Davis Blvd, Naples, FL 34104.  The bank record for Mathews Trade Corp. shows an address of 1378 Chesapeake Ave. Naples, FL 34104, corresponding to the subject premises.  On February 2, 2010, a monetary wire transfer was initiated from account number xxxxxx5422 in the name of South Naples Escrow Company at Ironstone Bank to account number xxxxxx5997 in the name of Mathews Trade Corp at BB&T Bank.

54.  As of Thursday, February 11, 2010, this bank account had a current balance of $5,215.00.

**Iberia Bank Account Number xxxxxx6281**

55.  On February 11, 2010, an Iberia bank employee advised that on November 4, 2009, Michael Schuett opened account # xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank.  The bank record for this account shows an address of 1378 Chesapeake Avenue Naples, FL 34102 corresponding to the subject premises. The account was opened at a bank branch located at 775 Airport Road N. Naples, FL 34104.  Schuett advised bank employee(s) the account was to be for a payroll service.

56.  From November 4, 2009, through January 31, 2010, a total of twenty-eight (28) monetary wire transfers from Bluetool LTD were received into account # xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank totaling

31



$2,062,403.89. During that time frame, over 2,000 checks were written from account # xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank. Several incoming monetary wire transfers from South Naples Escrow Co., totaling $356,120.29, were deposited into account # xxxxxx6281 in the name of South Florida Payroll Company at Iberia Bank.

57. As of Friday, February 12, 2010, this bank account had a current balance of $75,000.00.

### Royal Bank of Canada (RBC Bank) Account Number xxxxxx2644

58. On February 16, 2010, RBC Bank employee advised on September 24, 2009, Michael Schuett opened Account Number xxxxxx2644 in the name of Internet Payment Services Group Inc. at RBC Bank. The bank record for this account shows an address of 1378 Chesapeake Avenue, Naples, Florida 34102 corresponding to the subject premises. The account was opened at a RBC branch located at 4099 Radio Road, Naples, Florida 34104.

59. A RBC Bank employee advised Account Number xxxxxx2644 in the name of Internet Payment Services Inc. receives regular incoming monetary wire transfers from Bluetool LTD. and South Naples Escrow Co.

60. As of February 16, 2010, this bank account had an approximate balance of $500,000.00.

### 2009 Audi Q7 Sport Utility Vehicle, VIN WA1AY74L29D023600

61. On or about December 14, 2009, Schuett purchased a gray 2009 Audi Q7 Sport Utility Vehicle, VIN WA1AY74L29D023600, from Audi of Naples. According to the Driver and Vehicle Information Database (DAVID), operated by the State of Florida, the



registered owner of VIN: WA1AY74L29D023600 is Michael Olaf Schuett at 1378 Chesapeake Ave., Naples, FL 34102. DAVID records report the vehicle tag number as USAG24 registered on December 14, 2009. DAVID records indicate that there is no lien on the vehicle. Bank records reflect that account # xxxxxxxx3940 at Bank of America in the name of Michael Schuett was debited on December 14, 2009, in the amounts of $1,449.20 and $22,038.00, both payable to Audi of Naples. On Bank of America check number 1011 in the amount of $1,449.20 the memo line indicates "Audi Q7" and on cashier's check number 7052710 in the amount of $22,038.00, the "Pay to the order of" line states, "Audi of Naples."

### Watches

62.    With the proceeds of monies wire transferred from Europe into accounts controlled by Schuett, Schuett purchased the following watches at Mayors Jewelers located 23140 Fashion Drive, Coconut Point Mall, Estero, FL 33928:

Men's Rolex Stainless Steel Milgauss watch, serial number unknown, total cost purchased on August 28, 2009, for $6,969.50 with Fifth Third Bank cashier's check number 15387385 in the amount of $5,969.50 and $1000.00 US currency;

Men's Rolex Black Dial Stainless Daytona Serial number V573859 purchased on November 12, 2009, for $10,520.00 paid in US currency; and,

Men's Rolex Black Dial Stainless Daytona, serial number 2830784, purchased on November 13, 2009, for $10,520.00, $9,600.00 of which was paid in US currency and the remainder was charged to a Visa card in Schuett's name.

63.    On August 27, 2009, Schuett purchased Cashiers check no. 15387385 in the amount of $5,969.50 with monies then in Fifth Third account no. xxxxxx6399, payable to Mayors Jewelers Inc. Additionally, Schuett made the following cash withdrawals



primarily via ATM from account xxxxxxxx3940 at Bank of America in the name of

Michael Schuett:

    11/3 - $  600 ATM
    11/3 - $  500 ATM
    11/4- $  600 ATM
    11/5- $  600 ATM
    11/6- $  600 ATM
    11/6- $5,000 at counter (Berkshire lakes banking center)
    11/9- $  300 ATM (SunTrust ATM)
    11/12-$7,520 -  withdrawal (Berkshire Lakes Banking Center)
    11/13- $1000 - Visa Debit Card at Mayors Jewelers.

64.  Additionally, on 13 November, 2009, the day Schuett purchased a watch for

cash in the amount of $9,600.00 and used his debit visa card to fund the remainder of

the purchase, there was a debit from Schuett's personal account # xxxxxxxx3940 at

Bank of America in the amount of $1,000.00 payable to South Mayor Jewelers.

65.  Based upon the collective training and experience of law enforcement

agents involved in this investigation, in the event that this Court grants the application

for seizure warrants, there is a substantial likelihood that the bank accounts will

continue to receive incoming monetary wire transfers, intended to be disbursed in

furtherance of the above-described activity, for a period of time after such warrant(s) are

initially served.  It is probable that those involved in the above described activity will be

unable to promptly cease the flow of funds or to inform those involved in this activity of

this investigation.  Therefore, I request that any warrant issued by the court authorize

the receiving bank to continue to allow funds to be credited to the subject accounts but

to bar any such funds to be debited from the accounts for any reason, for a period of

fourteen (14) days from the issuance of the warrant(s). Further,  I request that the

United States Secret Service be authorized to periodically remove such funds, after the

34



initial execution of any resulting seizure warrant(s) during that 14 day period.

66. Since the subject, Michael Schuett, continuously transfers funds which are traceable proceeds to violations of Title 18, United States Code, Section 1960, and the bank themselves tend to close many of the accounts periodically due to the volume of activity occurring, the government asserts that a restraining order is insufficient to ensure that these funds will be preserved for forfeiture.

## SEARCH WARRANT

67. Title 18, United States Code, Section 1084, entitled "Transmission of wagering information..." provides as follows:

> (a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

68. Title 31, United States Code, Section 5363, entitled "Prohibition on acceptance of any financial instrument for unlawful internet gambling" provides as follows:

> No person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful Internet gambling--
>
> ... (2) and electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of an electronic fund transfer or money transmitting service, from or on behalf of such other person....

35



69. On February 8th and February 9th, 2010, agents of the USSS Fort Myers Field Office conducted physical surveillance on the subject premises and learned, among other things, the following:

a. On February 9th, 2010, Special Agent (SA) James Eastman of the USSS conducted a surveillance the subject premises and observed an individual matching Schuett's description driving a dark gray 2009 Audi Q7 Sport Utility Vehicle (SUV) bearing FL tag USAG24 who pulled into the driveway of the subject premises. Schuett exited his vehicle and walked up the stairs which lead to the front door of the subject premises. Schuett opened an unlocked door and walked inside.

### Evidence, Contraband, Fruits, and Instrumentalities of the Crimes

70. Based on my investigative training and experience, as well as that of other agents assisting with this investigation, I know that the continuing viability of a criminal operation dealing in financial information is dependent upon the storage of such information, either electronically, manually, or both. The safe storage of such information pertaining to financial accounts and financial transactions including wire transfer instructions and routing numbers is essential to the continuing operations of the enterprise. Additionally, customer lists and customer contact information is essential to the continued operations of the enterprise. Persons engaged in these kinds of activities tend to keep this information readily and conveniently accessible either electronically though computer(s), manually or both. Therefore, I believe that items of evidence including address books, telephone toll records, credit card and bank account records including account numbers and personal identifiers will be found at the subject premises.

36



71. Additionally, I believe that computer hardware, software, passwords, data security devices, and computer data described in Attachment B and likely to be found the subject premises constitute evidence, contraband, fruits, and instrumentalities of illegal activities described herein. I also know that even if electronic information is deleted by a user from a computer, the computer system previously used to store the deleted information often retains evidence of the deleted electronic information. Remnants of files deleted by the user may still remain (in whole or in part) on the storage media because deletion of a file does not necessarily remove that data completely from the media.

### Description of the Premises to be Searched

### SEE ATTACHMENT A

### Method of Searching Computers, Digital Storage Devices and Preventing Disclosure of Privileged Information

72. Based upon my knowledge, training, and experience, as well as information related to me by agents assisting in this investigation, as well as others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices. I also know that during the search of a premise it is rarely possible to complete an on-site examination of computer equipment and storage devices for a number of reasons, including the following:

a.     Searching computer systems is a highly technical process that requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is rarely possible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct



a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, operating system, or software application being searched.

b.    The best practices for analysis of computer systems and storage media rely on rigorous procedures designed to maintain the integrity of the evidence and to recover "hidden," mislabeled, deceptively-named, erased, compressed, encrypted, or password-protected data, while reducing the likelihood of inadvertent or intentional loss or modification of data. A controlled environment, such as a law enforcement laboratory, is typically preferred to conduct such an analysis properly.

c.    The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. The hard drives commonly included in basic desktop computers are capable of storing millions of pages of text.

## Analysis of Electronic Data

73.    The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying the file directories and any individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); conducting a file-by-file review of the data; examining all the structured, unstructured, deleted, and overwritten data on a particular piece of media; opening or reading the first few pages of each file in order to determine their precise contents; scanning storage

38



areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

### Method of Searching Non-Electronic or Computer Related Items and Preventing Disclosure of Privileged Information

74.  Based on the information set forth herein, your affiant suggests that there is probable cause to believe that the items identified in Attachment B were used in the commission of a crime and constitute evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1084 (Transmission of wagering information), 1960 (Unlicensed money transmitting business), and Title 31, United States Code, Section 5363 (Prohibition on acceptance of any financial instrument for unlawful internet gambling) and will be found at the subject premises.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

NICHOLAS J. MENSTER
United States Secret Service

Sworn to and subscribed before me this
_____ day of February, 2010.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

39

# US AG 24 Inc.®

YOU'RE IN GOOD HANDS FROM THE VERY STAT...

- home
- US stock corporation
- LLC vs. Corporation
- shelf company
- office services
- services
- aditional services
- Corporate Bankruptcy
- Trademarks
- fee
- faq
- download







## Inventory of US Companies

The companies listed below are existing companies for which the federal fees (UBR Report) have not been paid, and which are therefore available for sale.

| Companyname | File No | Date | Capital | Price |
|---|---|---|---|---|
| LC. Global Technology, Inc* | P10000009221 Florida | 01/10 | 500.000.000 US$ | € 1.590,- |
| European Investment Club, Inc* | P09000096782 Florida | 10/09 | 900.000.000 US$ | € 2.590,- |
| First Austria Capital, Inc* | P09000075541 Florida | 09/09 | 500.000.000 US$ | € 2.590,- |
| Reflexobaby, Inc* | P09000068206 Florida | 08/09 | 100.000 US$ | € 2.590,- |
| "WHC Capital Group, Corp* | P09000065466 Florida | 07/09 | 900.000.000 US$ | € 2.590,- |
| "OPEC International Inc* | P09000065654 Florida | 07/09 | 450.000.000 US$ | € 2.590,- |
| MC Abster & Kumm Management Trust, Inc* | P09000051446 Florida | 07/09 | 100.000.000 US$ | € 2.590,- |
| JM-BUX Business Group* | P09000030523 Florida | 04/09 | 10.000.000 US$ | € 2.590,- |
| US Investment & Trade Company* | P09000016930 Florida | 02/09 | 800.000 US$ | € 2.590,- |
| Timedesign & Media Inc* | P08000089700 Florida | 10/08 | 10.000 US$ | € 2.990,- |
| GONEAD Capital Corp* | P08000084591 Florida | 09/08 | 600.000.000 US$ | € 2.990,- |
| Calypso Finaca* | P08000001132 Florida | 01/08 | 10.000.000 US$ | € 2.990,- |
| "RE-COSMOPOLITAN Inc* | P08000004240 Florida | 04/08 | 650.000.000 US$ | € 2.990,- |
| US Capital & Development, Inc* | P07000094532 Florida | 09/07 | 350.000.000 US$ | € 2.590,- |
| "H-Reset Cable & Investment Holding Corp* | P07000079597 Florida | 07/07 | 10.000.000 US$ | € 2.590,- |
| Golf & More 24 Inc* | P07000074221 Florida | 06/07 | 100.000.000 US$ | € 2.590,- |

* Bank account
"sold

The key advantages of a US Corporation:

➔ Protection from liability
➔ Lower taxes
➔ Anonymity
➔ No inheritance taxes
➔ Asset protection
➔ No obligations regarding start-up capital
➔ no expropriated funds
➔ creation of new creditworthiness
➔ low running costs
➔ capitalization through sale of shares
➔ access to the US capital market

Have you got any questions?
Send us an e-mail

## Property Management Florida

Property Management

[More Information]

US 24®
Property Management

Copyright 1998-2010 US AG 24 Inc

Exhibit 1

## ATTACHMENT A

The premises to be searched, to-wit; that residence located at 1378 Chesapeake Avenue Naples, FL 34102 is located in a two story, four unit condominium building facing north (two units on bottom, two on top).  The building has four garage doors facing north on the ground level.   The building is tan in color, with white trim and has a light brown asphalt roof.  The doors to all units as well as the stairs are painted light blue.  The metal stair rails are painted white.   The premises to be searched is the upstairs unit on the left (east), when facing the front of the building; the unit has the numbers 1378 in black to the left of the front door next to a white metal porch light.  The building is bordered by similar buildings to the East and West, and on the South by a canal. The building has an American Flag on a large flagpole in the front.  Also in front is a large Oak tree, four mailboxes mounted on a white wooden post and a for rent sign. The building is the 13th home/building on the left from the intersection of Sandpiper and Chesapeake Ave.

## ATTACHMENT B

Any and all items, materials, documents, data and information stored in any format, physical or electronic, and any other items that may constitute evidence, contraband, fruits, and instrumentalities of a violation of Title 18, United States Code, Sections 2, 371, 1084 & 1960 and Title 31, United States Code, Section 5363, namely:

1.    Documents, information or records, in any form whatsoever, pertaining to accounts held with Internet Service Providers or of Internet use, including but not limited to, account user-names, passwords, subscriber information, and usage logs;

2.    Any and all bank documents, in any form whatsoever, pertaining to and including personal and business checks and checking account information in the name of Schuett and any of his companies, including cashier's checks and cash transactions;

3.    Documents, information or computer files, in any form whatsoever, containing communications among Schuett, including any of Schuett's companies, and persons and/or entities, including but not limited to Bluetool LTD, WireCard AG, relating to the activity described in the supporting affidavit either explicitly or implicitly, including but not limited to chat logs, private messages, web site forum postings, and e-mail messages;

4.    Items, materials, documents, information or records, in any form whatsoever, referencing, regarding or relating to the activities and operations of the unlicensed money transmitting business(es) and/or an internet gambling enterprise including transmission of wagering information and acceptance of financial instruments, as described in the supporting affidavit, including the identities and activities of persons and entities participating in such activities, either as bettors, gamblers or the gaming

enterprise, as well as those facilitating the marketing of such activities on behalf of the gaming enterprise, and the necessary flow of monies among the gaming enterprise and bettors and gamblers;

5.      Items, materials, documents, information or records, in in any form whatsoever, referencing, regarding or relating to the websites www.ultimatebet.com; www.usag24.com; www.absolutepoker.com; www.poketfives.com; www.bluffmagazine.com; www.cardplayer.com; and www.pokerpages.com;

6.      Documents, information or records, in in any form whatsoever, relating to the ownership, occupancy, or use of the premises to be searched;

7.      Computer hardware, meaning any and all computer equipment - (Included within the definition of computer hardware is any electronic device capable of data processing (such as central processing units, laptop or notebook computers, personal digital assistants, and wireless communication devices); storage media, as defined below; and security devices, also as defined below);

8.      Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programs used or intended to be used to communicate with computer components;

9.      Computer-related documents that explain or illustrate the configuration or

use of any seized computer hardware, software, or related items;

10.    Data security devices, meaning any devices, programs, or data – whether themselves in the nature of hardware or software – that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records - (Such items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form);

11.    Storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, backing up, and using electronic data - (Included within this definition is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed hard disks, external hard disks, removable hard disks, floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, or other memory storage devices);

12.   Currency, whether U.S. or otherwise;

13.   "Powership" device belonging to Federal Express; and

14.   Any such items or property included in seizure warrants obtained in this case, which constitute property subject to seizure and forfeiture pursuant to the following statutes:  Title 18, United States Code, Section 981(a)(1)(A) [civil forfeiture of property involved in violation of  Title 18, United States Code, Section 1960 (unlicensed



money transmitting business), or any property traceable to such property] and Title 18, United States Code, Section 982(a)(1) [criminal forfeiture of property involved in violation of Title 18, United States Code, Section 1960 (unlicensed money transmitting business), or any property traceable to such property], to include the following:

a. A 2009 Audi Q7 Vehicle, VIN WA1AY74L29D023600, Florida Tag USAG24, Registered to Michael Schuett;

b. Three Rolex watches, namely a stainless steel Milgauss Rolex; a Black Dial stainless steel Daytona Rolex, serial number V573859; and a Black Dial stainless steel Daytona Rolex, serial number 2830784.